IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **Heyam Hajmohammad,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) Civ. No. 3:07-CV-0215-N |
| v. | ) |
| | ) |
| **Anne K. Barrows, et. al.,** | ) |
| | ) |
| **Defendants.** | ) |

**PLAINTIFF'S BRIEF IN RESPONSE TO DEFENDANT'S MOTION
TO DISMISS OR REMAND IN THE ALTERNATIVE
& AMENDMENT TO PETITION FOR HEARING**

**INTRODUCTION**

The Court has jurisdiction pursuant to 8 U.S.C. §1447(b) to make a determination on the matter of Plaintiff's application for naturalization. Section 8 U.S.C. §1447(b) provides that when the United States Citizen and Immigration Services ("CIS") fails to make a determination on a petition for naturalization within the 120-day period following the date of the applicant's examination, the applicant may apply to the federal district court for a determination. Ms. Hajmohammad's examination occurred on October 8, 2003, when she was interviewed by CIS. More than 120 days have elapsed since the date of the examination of Ms. Hajmohammad and the Defendants have failed to make a determination.

Plaintiff amends her Petition for Hearing on Naturalization to add an additional Defendant, Robert S. Mueller III, Director of the Federal Bureau of Investigation ("FBI") which is an agency within the United States Department of Justice ("DOJ"). The FBI performs name checks and additional background checks on all applicants for naturalization at the request of CIS.

In Defendants' Motion to Dismiss, Defendant attempts to expand the meaning of "examination" and argues that the 120-day period does not commence until after all background checks on Plaintiff are completed. (Defendants' Motion to Dismiss/Remand at 11). In the alternative, Defendants want this Court to remand this matter to CIS. This argument is predicated on Defendants' interpretation of "examination" pursuant to 8 U.S.C. § 1447(b). Defendants argue that the "examination" required under §1446 is not "a single event" but rather "a process" that is not over until after background checks are completed. *Id.* at 11 ( *quoting Danilov v. Aguirre*, 370 F. Supp.2d 441, 443-44 (E.D. Va. 2005). Defendants' interpretation of the term "examination" is contrary to the interpretation of the majority of court opinions and to the plain language of the relevant statutes and regulations.

The Court should reject Defendants' arguments and deny Defendants' Motion to Dismiss. Moreover, this case must not be remanded to CIS. Ms. Hajmohammad filed her application for naturalization more than four years ago. The fact that her application remains pending demonstrates that CIS is either unwilling or unable to make a determination. Therefore, rather than remanding the matter to CIS, the Court itself should determine Ms. Hajmohammad's application for naturalization.

## FACTS

Ms. Hajmohammad is a citizen of the Jordan, and she has lived in the United States as a Lawful Permanent Resident since May, 1, 1998 (Exhibit "B" to Complaint). On April 17, 2003, Ms. Hajmohammad filed an application for naturalization on Form N-400 with CIS (Exhibit "A" to Complaint). Defendants conducted Ms. Hajmohammad's examination on October 8, 2003, and at that time she passed the English language test and the history and government test (Exhibit "D" to Complaint). Far more than 120 days have elapsed since this examination, and Ms. Hajmohammad's application has yet to be resolved. Frustrated with CIS's failure to make a determination, Ms. Hajmohammad filed the above captioned case on January 31, 2007. Therein, she asks this Court to assume jurisdiction over the matter of her application for naturalization.

## ARGUMENT

Defendants have filed a Motion to Dismiss Pursuant to Rule 12(b)(1) of Federal Rules of Civil Procedure for lack of subject matter jurisdiction and because the case is not ripe for resolution or, in the alternative, remand the matter back to CIS pursuant to 8 U.S.C. § 1447(b) so that CIS can conduct security background checks. For the reasons set forth below, both of Defendants' motions should be denied.

### A. THE COURT SHOULD DENY DEFENDANTS' MOTION TO DISMISS.

Defendants subject matter jurisdiction argument is based on a single case, *Danilov v. Aguirre*, 370 F. Supp.2d 441 (E.D. Va. May 26, 2005) and the minority of Courts that have agreed with that case. (Defendant's Motion to Dismiss at 11.)

### I. The Court Has Subject Matter Jurisdiction Over Ms. Hajmohammad's Petition.

Under § 1447(b), the district courts have jurisdiction over a naturalization application if CIS fails "to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted." Quoting *Danilov*, Defendants argue that the term "examination" as used in § 1447(b) means "essentially a process the agency follows to gather information concerning the applicant." The *Danilov* decision is out of line with the majority of other opinions on this issue. Moreover, the definition proposed in *Danilov* conflicts with the text of both § 1447(b) and the operative regulations, diverges from the overall statutory scheme, and contravenes legislative intent. Contrary to Defendants' assertion, these authorities make clear that the examination referred to in § 1447(b) occurs on the date a CIS officer initially interviews the applicant. CIS interviewed Ms. Hajmohammad on October 8,

2003. More than two years have elapsed between this interview and the date on which Ms. Hajmohammad filed her Complaint. This Court now has the jurisdiction under § 1447(b) to determine Ms. Hajmohammad's naturalization application.

**(a) The majority of opinions reject Defendants' definition of "examination."**

*Danilov* appears to be the only court to have found that the term "examination" refers to an ongoing information-gathering "process." Since *Danilov* was decided, many other district courts have expressly rejected its reasoning. *Shalan v. Chertoff*, Case No. l:05-CV-10980, 2006 WL 42143 (D. Mass. Jan. 6, 2006);  El-Daour v. Chertoff, 417 F. Supp. 2d 679 (W.D. Pa. 2005) (W.D. Pa. Aug. 26, 2005). Khelifa v. Chertoff, 433 F. Supp. 2d 836 (E.D. Mich. 2006) (citing cases); *El-Daour v. Chertoff*, 417 F. Supp. 2d 679 (W.D. Pa. 2005); *Meyersiek v. U.S. Citizenship and Immigration Service*, 2006 WL 1582397 (D.R.I. 2006); *Shalan v. Chertoff*, 2006 WL 42143 (D. Mass. 2006); *Daami v. Gonzales*, 2006 WL 1457862 (D.N.J. May 22, 2006) (unpublished decision); *Essa v. U.S. Citizenship and Immigration Services*, 2005 WL 3440827 (D. Minn. Dec. 14, 2005); *Al-Kudsi v. Gonzales*, 2006 WL 752556 (D. Or. 2006); Khan v. Chertoff, 2006 WL 2009055 (D. Ariz. 2006).

Further, with and without discussion of *Danilov*, almost all the courts have found that the term "examination" refers to the interview of the applicant by a Service officer. *Khelifa v. Chertoff*, 433 F.Supp.2d 836 (E.D.Mich. Jun 09, 2006); *Essa v. United States Citizenship & Immigration Serv.*, Case No. CIV051449, 2005 WL 3440827 (D. Minn. Dec. 14, 2005) (finding that the applicants were examined for purposes of § 1447(b) on the date each was interviewed by CIS, even though CIS had yet to receive the applicants' FBI background check); *Ogunfuye v. Acosta*, Case No. Civ. H-05-0551, 2005 WL 1607034 *2 (S.D. Tex. July 1, 2005) (finding that plaintiff could not prove that her examination occurred because she was arrested before her CIS interview); *Angel v. Ridge*, Case No. 2004-CV-4121-JPG, 2005 WL 1263143 *4 (S.D. Ill. May 25, 2005) (finding the applicants were examined for purposes of § 1447(b) on the date of their initial interview); *Sweilem v. U.S. Citizenship & Immigration Serv.*, Case No. 1:05 CV 125, 2005 WL 1123582 * 4-5 (N.D. Ohio May 10, 2005) (finding that an applicant was examined for purposes of § 1447(b) on the date of his interview with CIS); *Saidi v. Jenifer*, 2005 WL 5179147 (E.D.Mich. Dec 23, 2005) (NO. 05-71832); *Al-Kudsi v. Gonzales*, 2006 WL 752556 (D.Or. Mar 22, 2006) (NO. CV 05-1584-PK); *Daami v. Gonzales*, 2006 WL 1457862 (D.N.J. May 22, 2006) (NO. CIV.A. 05-3667(KSH)); *Said v. Gonzales*, 2006 WL 2711765 (W.D.Wash. Sep 21, 2006) (NO. C06-986P); *Shalabi v. Gonzales*, 2006 WL 3032413 (E.D.Mo. Oct 23, 2006) (NO. 4:06CV866 RWS); *Aslam v. Gonzales*, 2006 WL 3749905 (W.D.Wash. Dec 19, 2006) (NO. C06-614MJP); *Affaneh v. Hansen*, 2007 WL 295474 (S.D.Ohio Jan 29, 2007) (NO. C-3-06-267); *Hussein v. Gonzales*, 474 F.Supp.2d 1265 (M.D.Fla. Jan 31, 2007) (NO. 306-CV-497J-32MCR); *Manzoor v. Chertoff*, 472 F.Supp.2d 801 (E.D.Va. Feb 05, 2007) (NO. 2:06CV455); *Kheridden v. Chertoff*, 2007 WL 674707 (D.N.J. Feb 28, 2007) (NO. CIV. 06-4792SRC); *Arshad v. Chertoff*, 2007 WL 701185 (E.D.Tex. Mar 02, 2007) (NO. 1:06-CV-277); Nguyen v. Gonzalez, 2007 WL 713043 (S.D.Tex. Mar 06, 2007) (NO. H-07-0048); *Mahd v. Chertoff*, 2007 WL 891867 (D.Colo. Mar 22, 2007) (NO. CIV.A.06CV01023WDMPA); *Negam v. U.S.*, --- F.Supp.2d ----, 2007 WL 891257 (N.D.Tex. Mar 23, 2007) (NO. 4:06CV855 A).

*El Daour* provides a good example of these authorities. Plaintiff Safwat El-Daour was a Palestinian national who became a lawful permanent resident of the United States and then applied for naturalization. *Id.* at 1. At the time of the court's decision, El Daour's application had been pending for nearly four years. *Id.* More than 120 days had elapsed since El Daour was interviewed by a CIS examiner. *Id.* at 2. CIS, however, had yet to receive the FBI background clearance. *Id.* Citing *Danilov*, CIS argued that it had not completed the "examination" of El Daour's application. *Id.* The court declined to follow *Danilov*, finding that the decision "misreads and/or ignores the applicable statute and regulations." *Id.* at 3. Instead, the court found that the term "examination" in § 1447(b) refers to the interview of the applicant conducted by a Service officer. *Id.* at 4.

Defendants argue that the personal interview is not the "examination" required under 8 U.S.C. §1446, and that this finding is incompatible with the plain language and purposes of 8 U.S.C. §§1446-1447, as well as CIS' reasonable interpretation of the Immigration and Nationality Act ("INA"), and the beneficial policy consequences of CIS' interpretation of the INA and its regulations.  Defendants further rely on extensively cited passages from *Danilov* and the few cases that have followed *Danilov*. With all due respect to the *Danilov* court, it should not be followed. *Danilov* was issued without the benefit of briefing from the plaintiff, it cites no authority for its interpretation of § 1447(b).  Furthermore, no such authority exists. See *El-Daour v. Chertoff*, 417 F. Supp. 2d 679 (W.D. Pa. 2005) at 3.

Other courts have refused to follow *Danilov* because it conflicts with the relevant statutes and regulations. *Khelifa v. Chertoff*, 433 F.Supp.2d 836 (E.D.Mich. Jun 09, 2006); *Shalan*, 2006 WL 42143 at 1; *El Daour*, 2005 WL 2106572 at 3*; Saidi v. Jenifer*, 2005 WL 5179147 (E.D.Mich. Dec 23, 2005) (NO. 05-71832); *Al-Kudsi v. Gonzales*, 2006 WL 752556 (D.Or. Mar 22, 2006) (NO. CV 05-1584-PK); *Daami v. Gonzales*, 2006 WL 1457862 (D.N.J. May 22, 2006) (NO. CIV.A. 05-3667(KSH)); *Said v. Gonzales*, 2006 WL 2711765 (W.D.Wash. Sep 21, 2006) (NO. C06-986P); *Shalabi v. Gonzales*, 2006 WL 3032413 (E.D.Mo. Oct 23, 2006) (NO. 4:06CV866 RWS); *Aslam v. Gonzales*, 2006 WL 3749905 (W.D.Wash. Dec 19, 2006) (NO. C06-614MJP); *Affaneh v. Hansen*, 2007 WL 295474 (S.D.Ohio Jan 29, 2007) (NO. C-3-06-267); *Hussein v. Gonzales*, 474 F.Supp.2d 1265 (M.D.Fla. Jan 31, 2007) (NO. 306-CV-497J-32MCR); *Manzoor v. Chertoff*, 472 F.Supp.2d 801 (E.D.Va. Feb 05, 2007) (NO. 2:06CV455); *Kheridden v. Chertoff*, 2007 WL 674707 (D.N.J. Feb 28, 2007) (NO. CIV. 06-4792SRC); *Arshad v. Chertoff*, 2007 WL 701185 (E.D.Tex. Mar 02, 2007) (NO. 1:06-CV-277); *Nguyen v. Gonzalez*, 2007 WL 713043 (S.D.Tex. Mar 06, 2007) (NO. H-07-0048); *Mahd v. Chertoff*, 2007 WL 891867 (D.Colo. Mar 22, 2007) (NO. CIV.A.06CV01023WDMPA); *Negam v. U.S.*, --- F.Supp.2d ----, 2007 WL 891257 (N.D.Tex. Mar 23, 2007) (NO. 4:06CV855 A).   This Court should likewise decline to follow *Danilov* and instead find that the term "examination" used in § 1447 refers to the initial interview of the applicant by a Service officer.

**(b) The text of 8 U.S.C. 1447(b) indicates that the date of examination is the date CIS interviews the applicant**.

Defendants' proposed interpretation of the term "examination" cannot be squared with the text of the statute and operative regulations and, accordingly, it must be rejected. See *In re County of Orange*, 262 F.3d 1014, 1018 (9th Cir. 2001) (stating that "[w]hen the statute's

language is plain" the court must "enforce it according to its terms"). Congress has consistently used two separate terms, "investigation" and "examination", to refer to distinct stages of naturalization. *Shalan*, 2006 WL 42143 at 1. While 8 U.S.C. 1446(a) describes the "investigation" of the applicant to be conducted, 8 U.S.C. 1446(b) outlines the "examination" of the applicant. *Id.* And, while 8 C.F.R. § 335.1 describes the "investigation," 8 C.F.R. 335.3 outlines the "examination." *Id.* The investigation stage includes "review of all pertinent records, police department checks, and a neighborhood investigation." 8 C.F.R. § 335.1. The examination is the initial interview of the applicant by CIS. 8 C.F.R. 335.2; *Shalan*, 2006 WL 42143 at 1. Defendants' definition of the term "examination" as an ongoing process that includes the FBI background check muddles the clear distinction drawn between these two stages in the statutes and regulations.

In addition, the language of § 1447(b) makes clear that the "examination" is not a "process" as Defendants suggest. Under § 1447(b), the court obtains jurisdiction if CIS fails to make a determination within the 120-day period following "the date on which the examination" under 8 U.S.C. § 1446 is conducted. The quoted language indicates that the examination is a thing that occurs on a "particular, identifiable date." *El-Daour v. Chertoff*, 417 F. Supp. 2d 679 (W.D. Pa. 2005). The "process" Defendants describe does not occur on an identifiable date. (Defendants' Motion to Dismiss at 11.) This "process" includes the background check portion of the "investigation" stage, which, as this case demonstrates, can take years to complete. *Id.*

The operative regulations establish that the term "examination" refers to the interview that CIS conducts with the applicant. Section 8 C.F.R. § 335.2(c) describes the procedure for the examination as follows: (c) Procedure. Prior to the beginning of the examination, the Service officer shall make known to the applicant the official capacity in which the officer is conducting the examination. The applicant shall be questioned under oath .... The Service officer shall maintain ... brief notations ...[including] a record of the test administered to the applicant on English literacy and basic knowledge of the history and government .... The applicant and the Service shall have the right to present such oral or documentary evidence and to conduct such cross-examination as may be required ....  This procedure describes the interview - an in-person meeting between the applicant and a CIS officer, during which the CIS officer administers an oath to the applicant and then asks the applicant questions. *Id.*

Other parts of the regulations lead to the same conclusion. Section 8 C.F.R. 335.2(a) provides that "the applicant may request the presence of an attorney" at the examination. If Defendants' interpretation of "examination" were correct, this provision would give the applicant the right to have counsel present at every turn during the background investigation. This is an inconceivable result. Section 8 C.F.R. 335.2(a) is simply intended to provide the applicant with the right to have an attorney present when CIS interviews the applicant. Similarly, section 8 C.F.R. 335.6 provides that an applicant for "naturalization shall be deemed to have abandoned his or her application if he or she fails to appear for the examination ..." This provision would be nonsensical if the term "examination" were interpreted to include background checks. How could an applicant fail to appear for a background check that the FBI is required to conduct?

Further, 8 C.F.R. § 335.3(b) provides that CIS may continue the initial examination on an application; however, in such case, the reexamination "shall be scheduled *within the 120-period*

*after the initial examination*" (emphasis added). An applicant may only request a "postponement of the second examination to a date that is more than 90 days after the initial examination" if the applicant agrees to waive the requirement that CIS "render a determination on the application within 120 days from the *initial interview*." 8 C.F.R. § 312.5(b) (emphasis added). If the examination were an ongoing process, there would be no need for CIS to continue it, to reschedule it, or to obtain a waiver of the 120-day period. The examination would simply continue until complete, at which time the 120-day period would commence.

Under the operative regulations, Ms. Hajmohammad's examination commenced when the Service officer began to interview her on May 8, 2002. Notably, his examination concluded that same day. Section 8 C.F.R. 335.2(e) provides that: (e) Record of examination. *At the conclusion of the examination*, all corrections made on the application form and all supplemental material shall be consecutively numbered and listed in the space provided on the applicant's affidavit contained in the application form. *The affidavit must then be subscribed and sworn to, or affirmed, by the applicant and signed by the Service officer*. (Emphasis added.) Thus, the *execution of the affidavit* contained in the application form *signals the conclusion of the examination*. The affidavit in Ms. Hajmohammad's application form was executed by Ms. Hajmohammad, and signed by the CIS officer, at the interview on May 8, 2002. (Application for Naturalization at 10, Attached as Exhibit A.) Given that CIS signaled the conclusion of Ms. Hajmohammad's examination on the date of her interview, it is not possible that the examination remain ongoing more than three years later. The text of these statutes and regulations make clear that the term "examination" in § 1447(b) is intended to mean the interview of the applicant by a Service officer. Ms. Hajmohammad's examination took place more than three years ago.

**(c) The statutory context demonstrates that the terms "examination" and "investigation" refer to two distinct stages of the naturalization process**.

In addition to being inconsistent with the text of § 1447(b), the Defendants' interpretation of the term "examination" makes little sense in the context of the overall statutory scheme. *See A-Z Int'l v. Phillips*, 323 F.3d 1141, 1147 (9th Cir. 2003) (stating that, when interpreting a statute, courts must consider Congress's words in the context of the statutory scheme). The Ninth Circuit describes this statutory scheme as follows:  The naturalization process is generally divided into four stages. First, the applicant must submit completed application materials to the INS .... Second, the INS conducts a background investigation, which includes a fingerprint check by the FBI. 8 U.S.C. § 1446(a); 8 C.F.R. § 335.1 .... At the third stage, the applicant is interviewed by an INS officer who will, except in limited cases, either grant or deny the naturalization application within 120 days of the interview. 8 C.F.R. § 335.3(a) .... The final stage of processing involves scheduling the applicant for the oath ceremony. See 8 U.S.C. §§ 1421, 1448; 8 C.F.R. §§ 310.3, 337. *Sze v. Immigration and Naturalization Service*, 153 F.3d 1005, 1007 (9th Cir 1998). *See also Castracani v. Chertoff*, 311 F. Supp.2d 71, 73 (D.D.C. 2005). Contrary to Defendants' assertion, there is no temporal overlap between the FBI investigation, which occurs in the second stage, and the examination, which occurs in the third stage. Section 8 C.F.R. § 335.2(b) provides that the Service will notify applicants for naturalization to appear before a Service officer for initial examination on the naturalization application *only after* the Service has received a definitive response from the Federal Bureau of Investigation that a full criminal background check of an applicant has been completed.

(Emphasis added.) Under this provision, CIS is required to wait to schedule the examination of the applicant until it has received the results of the FBI Investigation. *Id.* Accordingly, it makes no sense to interpret the term "examination" as used in § 1447(b) as a process that remains ongoing until the receipt of these results. *See also Shalan*, 2006 WL 42143 at 1 (stating that "the regulation requires completion of the investigation before the examination may even be *started*").

In light of the statutory context, the "120-day period after the date on which the examination is conducted" should be interpreted as referring to the period following the date CIS initially interviews the applicant, that being the date of the examination. In fact, Ninth Circuit jurisprudence already assumes such an interpretation. In *Sze*, the Ninth Circuit explained that the INS must "either grant or deny the naturalization application within 120 days of the *interview*". 153 F.3d at 1007 (emphasis added). The Court then repeated this interpretation in *Unites States v. Hovsepian*, 359 F.3d 1144, 1161 (9th Cir. 2004), wherein it found that "8 U.S.C. § 1447 requires the INS to make a decision regarding a naturalization application within 120 days of INS's *initial interview* of the applicant" and that the "consequence for failure to meet this deadline" is "that the district court gains jurisdiction over the over the matter." (emphasis added). The statutory scheme governing naturalization contemplates that CIS will schedule its initial interview of the applicant after receiving the results of the FBI's background check, and that CIS will either make a determination on the application within the 120-day period following the initial interview or risk ceding jurisdiction to the district court. Here, CIS scheduled Ms. Hajmohammad's interview October 8, 2003 and then failed to make a determination on her application within the two plus years that have elapsed since that date.

**(d) Interpreting the 120-day period as running from the date on which CIS interviews the applicant comports with Congressional intent**.

Another important consideration when interpreting statutes is the Congressional intent behind the statute as "revealed in the history and purposes of the statutory scheme." *U.S. v. Buckland*, 289 F.3d 558, 565 (9th Cir. 2002). "A central purpose of the [Immigration Act of 1990] was to reduce the waiting time for naturalization applicants." *See Hovespian*, 359 F.3d at 1163 ( *citing H.R.* Rep. No. 101-187, at 8 (1989); 135 Cong. Rec. H4539-02, H4542 (1989) (statement of Rep. Morrison)). Accepting Defendants' interpretation of 8 U.S.C. § 1447(b) would frustrate this purpose.

"Neither the statute nor the regulations prescribe a time period within which the investigation must be completed." *Sze*, 153 F.3d at 1007. However, once CIS has conducted the initial interview of the applicant, § 1447(b) requires it to make a determination within 120 days. If CIS follows the applicable regulations, it should normally have all the information it needs to make a determination on the application once it has conducted this interview. This provision reduces the waiting time for naturalization by encouraging the agency to come to a decision on complicated applications which might otherwise be left to linger for years.

Defendants suggest that that the 120-day period does not begin to run until the interview, the FBI background investigation, and "all other aspects of the examination process are completed." (Defendants' Motion to Dismiss at 11, quoting *Danilov*, 370 F. Supp. at 443-44).

This interpretation undermines the efficacy of the 120-day period by leaving unclear the date on which it commences. Under it, the 120-day period could commence after the initial interview, the receipt of the FBI background check, or the completion of some other unspecified part of the "examination process." CIS could nearly always extend the time it has to make a determination on an application by claiming the "examination process" remained incomplete. This is not what Congress intended when it drafted § 1447(b).

In sum, the term "examination" in § 1447(b) means the initial interview of the applicant by a Service officer. This interpretation is supported by the majority of opinions on the issue, the statutory text, the overall statutory scheme, and the Congressional intent in enacting § 1447(b). Accordingly, the Court should find that it has jurisdiction to determine the matter of Ms. Hajmohammad's naturalization application under § 1447(b) because more than 120 days have elapsed since Ms. Hajmohammad's October 8, 2003 examination.

**B. THE COURT SHOULD NOT REMAND THIS MATTER TO CIS.**
**The Court should decline to remand this matter because Defendants have unreasonably delayed making a determination on Ms. Hajmohammad's application.**

The Court should retain jurisdiction over Ms. Hajmohammad's Complaint. That is the only way the issues raised therein are likely to be resolved. Immigration officials "have a non-discretionary duty to process [naturalization] application[s] within a reasonable time." *Alkenani v. Barrows*, 356 F. Supp.2d 652, 656 (N.D. Tex. 2005). In *Alkenani v. Barrows*, a Northern District of Texas Court decision suggested that a delay of just two years in processing an application for naturalization may be unreasonable. *Id* at 652, 657 n. 6 (2005). Immigration cases on various other issues confirm that a two-year delay in processing is too long. *Paunescu v. I.N.S.*, 76 F. Supp.2d 896, 902 (N.D. Ill. 1999) (two-year delay in processing adjustment of status application); *Yu v. Brown*, 36 F. Supp.2d 922, 935 (D.N.M. 1999) (two-and-a-half-year delay in processing application for special immigrant juvenile status); *Agbemaple v. I.N.S.*, Case No. 97 C 8547, 1998 WL 292441 (N.D. Ill. May 18, 1998) (20-month delay in processing visa petition and application for permanent residence). Over three years have elapsed since Ms. Hajmohammad filed her application, and over two and one-half years have elapsed since Ms. Hajmohammad's examination. A delay of this length is *per se* unreasonable.

Defendants assert that CIS cannot proceed to final adjudication of Ms. Hajmohammad's petition because there has not been a final resolution regarding Plaintiff's security checks. However, defendant's failure to complete these security checks does not excuse its delay in processing Ms. Hajmohammad's application. *See Castracani v. Chertaff*, 377 F. Supp.2d 71, 74 n. 8 (2005) (noting that the absence of the FBI's background check does not excuse delay). Defendants have offered no specific explanation of why it has taken years to run a criminal background check on Ms. Hajmohammad. There is no indication when Defendants expect this background to be complete. Defendants have had more than sufficient time to gather whatever information is required to determine Ms. Hajmohammad's application. If Defendants have concerns about Ms. Hajmohammad's background, they can raise those concerns in a hearing before this Court on the issue of Ms. Hajmohammad's application for naturalization.

Furthermore, determining the matter of Ms. Hajmohammad's naturalization application at this juncture would serve the interests of judicial economy. A federal district court's jurisdiction to conduct a *de novo* review of a naturalization application is triggered by two separate circumstances: (1) where, as here, the agency conducts an examination of the applicant but fails to issue a ruling within 120 days of the application (8 U.S.C. § 1447(b)); or (2) where the agency denies the naturalization application and the applicant appeals (8 U.S.C. § 1421(c)). If the Court remands the matter back to CIS and CIS denies Ms. Hajmohammad's application, Ms. Hajmohammad will appeal the denial. In such case, Ms. Hajmohammad will return to this Court and the Court will be required to review her application. The Court should simply determine the matter of Ms. Hajmohammad's naturalization, thereby potentially saving itself and the parties an additional and unnecessary expenditure of resources.

CIS has unreasonably delayed processing Ms. Hajmohammad's naturalization application. Accordingly, the Court should not remand this matter back to CIS, where it would in all likelihood continue delaying the process. The Court should determine the matter of Ms. Hajmohammad's naturalization application at a future trial, during which Defendants will have the opportunity to state any objections they may have to Ms. Hajmohammad's naturalization.

**C. IF THE COURT CHOOSES TO DISMISS OR REMAND THIS CASE, IT SHOULD MAKE THE FOLLOWING PROVISIONS**.

**I. If The Court Finds That It Lacks Subject Matter Jurisdiction, We Request Leave To Amend The Complaint To State Claims Under The Mandamus Act And The Administrative Procedures Act**.

The Mandamus Act gives federal district courts original jurisdiction "over any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Likewise, the Administrative Procedures Act ("APA"), at 5 U.S.C. § 701, *et seq.*, in combination with 28 U.S.C. § 1331, provides federal district courts with the jurisdiction to "compel agency action unlawfully withheld or unreasonably delayed". *Hu v. Reno*, Case No. 3-99-CV-l 136-BD, 2000 WL 425174 (N.D. Tex. Apr. 8, 2000). As discussed above CIS has a non-discretionary duty to process Ms. Hajmohammad's naturalization application within a reasonable time. *See Alkenani*, 356 F. Supp.2d at 656. Other courts have held that, when CIS fails to make a determination within a reasonable period of time, subject matter jurisdiction exists under the Mandamus Act or the APA. *See Elkhatib v. Butler*, Case No. 04-22407, 2005 US Dist. Lexis 22858 (S.D. Fla. June 6, 2005); *Paunescu*, 76 F. Supp.2d at 901; *Yu*, 36 F. Supp.2d at 933; *Agbemaple*, 1998 WL 292441. Accordingly, if the Court finds that it lacks subject matter jurisdiction to determine Ms. Hajmohammad's application under § 1447(b), we request leave to amend the Complaint to state claims under the Mandamus Act and the APA asking this Court to compel CIS to adjudicate Ms. Hajmohammad's application within a reasonable time.

**II. If The Court Decides To Remand This Case, It Should Set A Strict Timetable Requiring Action By CIS**.

Under § 1447(b), the Court has the discretion to "remand the matter, with appropriate instructions, to the Service to determine the matter." CIS has already unreasonably delayed making a determination on Ms. Hajmohammad's application for naturalization. If the Court decides to remand this matter back to CIS, we ask that it instruct CIS to make such a determination within 30 days of the remand.

## CONCLUSION

The Court has subject matter jurisdiction over Ms. Hajmohammad's Complaint. For the reasons stated above, the Court should deny Defendants' Motion to Dismiss and the Alternative Motion to Remand. The Court, and not CIS, should determine the matter of Ms. Hajmohammad's naturalization application.

Respectfully Submitted,

/s/ Husein A. Abdelhadi
Husein A. Abdelhadi
Abdelhadi & Associates, PC
State Bar No. 24004530
816 Oakwood Tower
3626 N. Hall Street
Dallas, Texas 75219
(214) 219-8803
(214) 219-8804 (fax)
haa@aalaw.net

ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I herby certify that on April 19, 2007, I electronically filed the foregoing document with the clerk of the court of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.

/s/ Husein A. Abdelhadi
Husein A. Abdelhadi
Abdelhadi & Associates, PC